UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC COURTNEY HUNTER, | Case No. 1:21-cv-00037-BLW |
| Defendant-Movant, | 1:17-cr-00037-BLW |
| v. | |
| UNITED STATES OF AMERICA, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff-Respondent. | |

Before the Court is Eric Courtney Hunter's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 129 in Crim. Case No. 1:17-cr-00037-BLW and Dkt. 1 in Civ. Case No. 1:21-cv-00037-BLW), Motion for Evidentiary Hearing (Civ. Dkt. 13), Motion Requesting Status Conference (Civ. Dkt. 15), and Motion to Compel (Civ. Dkt. 16). The Court has reviewed the record and the submissions of the parties. For the reasons set forth below, the Court dismisses the § 2255 Motion. The Motion for Evidentiary Hearing is denied, and the remaining motions are moot.

## BACKGROUND

On December 13, 2017, a Superseding Indictment was filed charging Hunter with one count of unlawful possession of a firearm in violation of 18

U.S.C. § 922(g)(1) on or about December 6, 2016, having been convicted of a crime punishable by imprisonment for a term exceeding one year, and one count of unlawful possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) on or about January 6, 2017, having been convicted of a crime punishable by imprisonment for a term exceeding one year. Crim. Dkt. 33.

Each count referred to the same predicate offense: Intimidating a Witness, on May 29, 2015, Case No. CR-2013-10683, in the District Court of the Fifth Judicial District of the State of Idaho. *Id*. Each count also involved the same firearm: a Maverick Arms, Model 88, 12-gauge shotgun with an obliterated serial number, and Count Two also included twenty-one Winchester 12-gauge shotgun shells. *Id*. The first incident involved firing a shotgun in the home where Hunter was residing. The second incident involved finding the same shotgun in the BMW he was driving at the time of his arrest that the home's owner had reported stolen along with $27,000 in cash.

On May 26, 2017, the Court entered an order granting defense counsel's motion for a competency evaluation. *Order*, Crim. Dkt. 25. On November 8, 2017, after the BOP evaluator indicated that there was insufficient evidence of incompetence to stand trial due to Hunter's refusal to participate in testing, the Court granted Hunter's motion to be returned to the BOP for further evaluation. *Min. Entry*, Crim. Dkt. 30; *Order*, Crim. Dkt. 31.

**MEMORANDUM DECISION AND ORDER - 2**

On January 26, 2018, counsel for Hunter and the Government stipulated to Hunter's prior conviction and interstate transportation of the shotgun and ammunition. Crim. Dkt. 51. On January 30, 2018, the Court held a second competency hearing, determined that Hunter was competent to stand trial, advised Hunter of the mandatory minimum if sentenced as an Armed Career Criminal, and took his plea of not guilty. *Min. Entry*, Crim. Dkt. 65; *Tr.* Crim. Dkt. 117.

The case proceeded to trial on January 31, 2018, and concluded with the jury's verdict of guilty as to both counts on February 5, 2018. *Min. Entries*, Crim. Dkts. 68-72. It is noteworthy that Hunter refused to attend the final day of trial during which the Court instructed the jury, and he subsequently waived his right to participate in the presentence interview and to attend his sentencing. The Court found his absence to be knowing and voluntary. *See Trial Tr.* at 373-77, Crim. Dkt. 114; *Waiver of All Rights to Participate in Sentencing Process and Attendance at the Sentencing Hearing*, Crim. Dkt. 81.

On August 23, 2018, the Court imposed a sentence of imprisonment of 262 months to be followed by five years of supervised release on each count to run concurrently. *Judgment*, Crim. Dkt. 105. The Court had applied two enhancements at sentencing: under USSG § 2K2.1(b)(6)(B) based on the Court's finding that Hunter possessed the shotgun in connection with the theft of the BMW, and under USSG § 3C1.1 based on the Court's finding that a threatening voicemail Hunter

**MEMORANDUM DECISION AND ORDER - 3**

left on the presentence investigator's phone constituted obstruction of justice. On November 13, 2019, the Ninth Circuit affirmed the application of both enhancements. *USCA Mem.*, Crim. Dkt. 120. His Petition for Rehearing and Petition for Rehearing En Banc were denied on January 29, 2020. *USCA Order*, Crim. Dkt. 125. After his conviction but while his appeal was pending, the Supreme Court decided *Rehaif v. United States*, 139 S.Ct. 2191 (2019), addressing the proof required for a prosecution under 18 U.S.C. § 922(g) prohibiting firearm possession by nine different categories of individuals.

On January 25, 2021, Hunter timely filed his pending § 2255 Motion. He alleges that pursuant to *Rehaif*, the Government was required to but failed to prove that he knew that he had been previously been convicted of a felony, that trial and appellate counsel provided ineffective assistance in several respects, and that appellate counsel provided ineffective assistance by failing to raise the *Rehaif* issue.

## STANDARD OF LAW

### 1. 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds upon which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without

jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that a court must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted).

The court may also dismiss a § 2255 motion at various stages, including pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the court does not dismiss the proceeding, the court then determines under Rule 8 whether an evidentiary hearing is required. The court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the

evidence in the record.  *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

### 2. Ineffective Assistance of Counsel

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial, sentencing, and direct appeal. *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003). To establish a claim for ineffective assistance of counsel, Petitioner must prove (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's performance was deficient, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. To establish that counsel's performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

More particularly with respect to the performance prong, a defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" or that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 686-87. There is a strong presumption that counsel's performance falls "with the wide range of

reasonable professional assistance." *Id*. at 689. This is so because "[it] is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act of omission of counsel was unreasonable." *Id.*

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

Finally, in evaluating an ineffective assistance of counsel claim, the court may consider the performance and prejudice components of the S*trickland* test in either order. *Id.* at 697. The Court need not consider one component if there is an insufficient showing of the other. *Id.*

## DISCUSSION

In its Response, the Government argues that Hunter's *Rehaif* claim is procedurally defaulted and without merit, that he was not denied effective assistance of counsel on the various grounds asserted, and that appellate counsel was not ineffective for failing to raise a *Rehaif* claim on appeal. Because two of the three claims pertain to *Rehaif*, the Court will briefly address the *Rehaif* decision before addressing the individual claims.

1.    *Rehaif Claims*

Title 18 U.S.C. § 922 makes it unlawful for certain categories of individuals, including as relevant here, "any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to possess a firearm. 18 U.S.C. § 922(g)(1). Title 18 U.S.C. § 924(a)(2) prescribes the penalty for knowingly violating § 922(g). In *Rehaif*, the court in addressing another category of those prohibited from possessing a firearm under § 922(g), held that "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 129 S.Ct. at 2200. Subsequently, the Supreme Court applied *Rehaif* to firearm-possession offenses specifically involving convicted felons. *See Greer v. United States*, 141 S.Ct. 2090 (2021). Hunter was convicted and his appeal was pending prior to the *Rehaif* decision.

A.    **Flawed Indictment and Jury Instructions in Light of *Rehaif***

Hunter alleges that under *Rehaif*, the Government was required to prove *mens rea* regarding the "prohibited status" element of § 922(g) and that the jury instructions and verdict form did not reflect those *Rehaif* requirements. He contends that it follows that the jury did not find and the Government did not prove all of the necessary statutory elements. The Government contends that this claim is

procedurally barred because Hunter failed to raise the issue at either the trial level or the appellate level.

Hunter is correct that the Superseding Indictment does not specify as an element that he knew he was a felon. Likewise, the relevant jury instructions did not specify that he had to know he was a felon at the time he possessed the shotgun. *See Jury Instruction Nos. 15, 16, and 18*, Crim. Dkt. 76. They only stated that he had to knowingly possess the shotgun which could be established by finding that Hunter consciously possessed what he knew to be a firearm and not that he knew that it was against the law.

Because Hunter did not raise the *Rehaif* issue at trial or on direct review, he must show cause and prejudice for not doing so or actual innocence. *See United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (noting that habeas review is not a substitute for an appeal citing *Bousley v. United States*, 523 U.S. 614, 621-22 (1998). *See also United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003). Hunter affirmatively asserts in his § 2255 Motion that he did not previously raise the issue because the claim was not available until the Supreme Court decided *Rehaif. § 2255 Motion*, ¶ 13, Civ. Dkt. 1.

In its Response, the Government, citing *United States v. Pollard*, 10 F.4th 948 (9th Cir. 2021), argued that this "exact claim" had been rejected by the Ninth Circuit which concluded that the knowledge of the "status" argument was

reasonably available before *Rehaif* and thus Pollard had not established cause for failing to raise the issue. However, the opinion in that case was withdrawn and superseded on denial of rehearing two months after the Government filed its Response. *See United States v. Pollard*, 20 F. 4th 1252 (9th Cir. 2021) (finding it unnecessary to determine whether Pollard had shown cause because he had not shown prejudice).

Subsequently, the Ninth Circuit decided that a defendant seeking relief under *Rehaif* in a § 2255 proceeding *had* established cause because, at the time he was sentenced in 2014, every court to have addressed the argument that the government was required to prove that he knew he was a convicted felon at the time he possessed a firearm had rejected it. *See United States v. Werle*, 35 F.4th 1195, 1200-01 (9th Cir. 2022) (citing *Reed v. Ross*, 468 U.S. 1, 14-17 (1984)). Accordingly, "there was no reasonable basis for [the argument] that the Government was required to prove that he knew of his status as a felon a the time he possessed the firearm." *Id*. at 1200.

Given that under *Werle* Hunter has established cause, the question becomes whether he can establish prejudice. The Court finds that he cannot.

In *Pollard* the Ninth Circuit cited the oft-quoted language from *Bousley* that "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Pollard*, 20 F.4th at 1255 (quoting *Bousley v. United States*, 523

U.S. 614, 621 (1998)). The court noted that the hurdle of showing cause and actual prejudice was significantly higher in habeas cases than the hurdle required on direct appeal. It concluded that Pollard failed to overcome the hurdle "because we are confident he suffered no actual prejudice of a degree sufficient to justify collateral relief." *Id*. at 1256 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)). Hunter likewise has failed to overcome that hurdle.

In *Pollard*, the court recognized that under *Rehaif*, evidence of the knowledge element in felon-in-possession cases can be direct or circumstantial and allows for consideration of a defendant's criminal history in determining whether a *Rehaif* error was prejudicial. *Id*. It further noted that "'[i]n a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb' for a simple reason: 'If a person is a felon, he ordinarily knows he's a felon.'" *Id*. (quoting *Greer v. United States*, 141 S.Ct. 2090, 2097 (2021)).

That the uphill climb rarely succeeds when courts consider a defendant's criminal history is illustrated by several cases cited in *Pollard*: *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019) (finding "no probability" that Benamor did not know of his status after serving multiple years in prison for seven felonies, including a state felon-in-possession conviction); *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 989 (9th Cir. 2020) (finding "no reasonable

probability" of a different outcome when the defendant was in prison for over a decade with six prior felony convictions); *United States v. Johnson*, 979 F.3d 632, 638-39 (9th Cir. 2020) (three felony convictions and over five years in prison made it "overwhelming and uncontroverted" that Johnson knew of his felon status); *United States v. Door*, 996 F.3d 606, 619 (9th Cir. 2021) ("[A]bsent any evidence suggesting ignorance," the jury can " 'infer that a defendant knew that he or she was a convicted felon from the mere existence of a felony conviction' as evidenced by the defendant's stipulation." (citation omitted)).

Here, there is little doubt that Hunter knew his status as a convicted felon. He had seven prior felony convictions and had spent over seven years in prison prior to possessing the shotgun. *PSR* ¶¶s 35, 38, 39, 40, 41, 42, and 44, Crim. Dkt. 93. Significantly, at the time of his arrest and while he possessed the shotgun, Hunter had documents in the trunk of the BMW showing that he had served time in an Idaho prison. He had also stipulated to the fact of his prior felony conviction. *Stipulation*, Crim. Dkt. 51. Finally, as the Government argues, had Hunter raised the *Rehaif* issue at trial, it would have "easily proved" his knowledge that he was a felon.

Although Hunter has established cause, he has not established actual prejudice to excuse his procedural default.

**B.      Ineffective Assistance of Appellate Counsel for Failure to Raise *Rehaif* Issue.**

In Ground Three, Hunter alleges that "[a]ppellate lawyer failed to include the *Rehaif* decision in Appellate brief and oral argument as well as raise Due Process Violations that occurred in Trial and Jury Instructions." *§ 2255 Motion* at 5, ¶ C. He does not appear to claim that *trial* counsel should have and failed to raise the *Rehaif* issue. For the same reasons that his claim discussed above failed, this claim fails as well. Hunter is unable to demonstrate prejudice even if he were able to demonstrate deficient performance. In other words, he cannot show that there is a reasonable probability that the result would have been different had counsel raised a *Rehaif* claim on appeal.

Appointed counsel is not required to raise every possible issue on appeal if he decides "as a matter of professional judgment" not to do so. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, weeding out of weaker issues is "one of the hallmarks of effective advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (noting that counsel will often omit issues that have little likelihood of success).

Where a defendant fails under Fed. R. Crim. P. 51(b) to raise an objection in the trial court to properly preserve a claim but later raises the claim on appeal, Fed. R. Crim. P. 52(b)'s plain error standard comes into play. *Greer*, 141 S.Ct. at 2096

**MEMORANDUM DECISION AND ORDER - 13**

(citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)). On appeal, had counsel raised the unpreserved *Rehaif* issue, he would have had to show: "(1) an error (2) that was obvious and (3) that affected the defendant's substantial rights and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Benamor*, 937 F.3d at 1188 (citing *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)).

Here, as in *Benamor* and *Greer*, there was an error and it was clear given that *Rehaif* was decided before Hunter's direct appeal was final. However, as shown above, there was no reasonable probability that he would have been acquitted had a *Rehaif*-compliant jury instruction been given. *See id*. at 1189 (finding *Rehaif* error "did not affect Defendant's substantial rights or the fairness, integrity, or public reputation of the trial" where at time defendant possessed the firearm he had been convicted of seven felonies and had spent more than nine years in prison). *See also Greer,* 141 S.Ct. at 2097-98 (finding Greer failed to show that there was a reasonable probability that a *Rehaif*-instructed jury would have acquitted him where he had several prior felony convictions constituting substantial evidence that he knew he was a felon, he stipulated at trial to the fact that he was a felon, and he did not argue that he would have presented evidence at trial that he did not know he was a felon).

Given the above authority, it appears that given the substantial evidence that Hunter knew he was a felon at the time he possessed the shotgun, counsel would not have been successful on appeal on the *Rehaif* issue. Hunter has shown neither deficient performance nor prejudice.

**2.      Ineffective Assistance of Counsel Claims at Trial**

In Ground Two, Hunter argues that he was not permitted to testify at trial; failure to properly impeach; failure to call, secure, or subpoena a witness; failure to investigate; failure to introduce evidence and thoroughly challenge inconsistencies in government's witnesses; failure to test the alleged weapon for fingerprints, gunshot residue, DNA (forensics); failure to introduce evidence of law enforcement's bodycam and dashcam audio/video at time of traffic stop and arrest; failure to put on defense and communicate a plea; and ineffective opening and closing arguments.

The Government responds that the allegations are conclusory and unsupported by specific facts or are rebutted by the record. It urges dismissal of all ineffective assistance of counsel claims related to the trial. The Court notes that Hunter attempted to provide specifics to support some of his claims. *See § 2255 Motion* at 7-8. However, for the most part, the allegations are conclusory, speculative, or rebutted by the record.

**A.      Failure to Investigate Physical Evidence**

Hunter contends that counsel should have pursued analysis or testing for fingerprints, gunshot residue, and DNA on the seized shotgun and ammunition. He further contends that testing would have shown prints of the person who placed the shotgun in the vehicle or those of the person who was the "factual owner." Finally, he contends that the jury could have reasonably found that he was "set up" by Tonya Winter.

The Government submitted the affidavit of defense counsel Thomas Monaghan with its Response. *Monaghan Aff.* ¶ 9, Crim. Dkt. 14-1. In it he states that forensic testing would not have conclusively determined that Hunter had not possessed the shotgun. He also noted that co-counsel discussed the Government's failure to conduct such testing in his closing argument. *Id*. Indeed, co-counsel in his closing argument referred to the lack of testing and the testimony of certain officers that they were concerned about disturbing any existing fingerprints when they handled the shotgun indicating that perhaps testing should have been done. *Trial Tr.* at 411-12, Dkt. 114.

Furthermore, given that Hunter had already admitted to Detective Wilson that he possessed the shotgun and placed it in the BMW, there was a risk that his fingerprints or DNA would have been on the shotgun. *Interview Report*, Crim. Dkt. 21-3; *Interview Video,* Crim. Dkt. 21-4. Defense counsel had been successful in getting that confession suppressed. It would have been counterproductive to then

**MEMORANDUM DECISION AND ORDER - 16**

have the shotgun tested and risk revealing that Hunter's fingerprints or DNA were on it.

Hunter has failed to show deficient performance or prejudice resulting from counsel's failure to investigate physical evidence.

### B.    Failure to Introduce Bodycam and Dashcam

Hunter alleges that counsel failed to introduce evidence of law enforcement's bodycam and dashcam audio/video recorded at time of traffic stop and arrest. He contends that during the time frame that elapsed between the time he was stopped, searched, arrested, and questioned, evidence could have been mishandled. Hunter also appears to be alleging that there must have been bodycam and dashcam evidence given that there were ten officers, and if any of them had activated their devices, it would have shown mishandling and moving of evidence.

This claim is based on pure speculation and is not a sufficient basis for supporting an ineffective assistance of counsel claim.

### C.    Failure to Subpoena or Call a Witness(es) and Failure to Object to Government's Application for Writs of Habeas Corpus ad Testificandum

Hunter baldly asserts as part of Ground Two that counsel was deficient for failing to "call, secure or subpoena witness." However, he does not identify what witness or witnesses counsel should have called. And he does not describe the testimony they would have given or how the testimony would have resulted in a

different outcome. As the Ninth Circuit has said in the past, "We recognize that '[f]ew decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial,' . . . ." *Alcala v. Woodford,* 334 F.3d 862, 871 (9th Cir. 2003) (citing *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999)). Even if Hunter had identified potential witnesses, counsel could have reasonably exercised his professional judgment to not call them. This unsupported claim is subject to dismissal.

Hunter also appears to be claiming that counsel did not object to the Government's alleged failure to provide the defense with two "habeas corpus ad testificandum" that were signed January 23, 2018, but not filed until February 7, 2018, after the trial had concluded. These writs were directed to the Twin Falls County Jail and the Idaho Department of Corrections to transport Gregory Scheiman and Tonya Winter, respectively, to secure their appearance before the Court on January 31, 2018. Crim. Dkts. 79 and 80. He contends that if these documents were submitted to the jury, it would have shown that these witnesses were given immunity against further prosecution and self-incrimination. He also appears to believe that because they were not filed until after the trial, only the Court and the Government were aware that Scheiman and Winter were going to be called as witnesses.

**MEMORANDUM DECISION AND ORDER - 18**

A review of the record reveals that applications for the writs were filed and appeared on the public docket the day they were signed by the Court, January 23, 2018. Defense counsel would have received notice of the filings the same day through the Court's electronic filing system. Crim. Dkts. 40 and 42. What was filed on February 7, 2018, were the executed returns indicating that they had been received by Twin Falls County Jail and the Idaho Department of Corrections and those entities transported the witnesses to testify at trial as directed.

Furthermore, the Government provided Hunter and defense counsel with discovery identifying Scheiman and Winter as witnesses, and the Government listed them as witnesses in its Exhibit and Witness List filed with the Court a week prior to trial. Crim. Dkt. 44. Defense counsel was well aware that they would be testifying at trial. On cross examination of those witnesses, defense counsel attempted to impeach their testimony by delving into their prior drug use, prior criminal history, credibility, and prior statements to investigators. *See, generally, Trial Tr.* at 91, *et seq.* (Schmeiman), Crim. Dkt. 112; *Trial Tr.* at 211, *et seq.* (Winter), Crim. Dkt. 113.

Hunter also speculated based on the writs that Schmeiman was a confidential informant. The Government claims he was not, and Schmeiman testified that he was not. *Trial Tr.* at 123, Crim. Dkt. 112. Hunter also alleged that defense counsel did not play the recorded conversation of a federal agent questioning Schmeiman.

**MEMORANDUM DECISION AND ORDER - 19**

But the record reflects that counsel questioned him about his conversation with the federal agent. *Trial Tr.* at 110-113, Crim. Dkt. 112.

Hunter has shown neither deficient performance nor prejudice.

### D.   Ineffective Assistance of Counsel at Sentencing

Hunter, by his own choice, was not present at sentencing. However, he now advances several claims of ineffective assistance of counsel at sentencing.

### (1)   Mitigation Evidence

Hunter claims that counsel did not introduce character letters or mitigating evidence. This claim is rebutted by the record. Counsel introduced several letters. They were introduced both as exhibits to counsel's Sentencing Memorandum and separately. First, a letter from a former Marine Corps colleague who had known Hunter since 2002 and maintained contact with him ever since. He described Hunter's accomplishments and leadership qualities in the Marine Corps and well as Hunter's later mental health issues. He also testified at the sentencing. *Faler Letter*, Crim. Dkt. 100-1 at 1-2; *Sent. Tr.* at 40-52, Crim. Dkt. 115.

Next, a letter from another Marine Corps colleague recalled Hunter's excellent service and leadership qualities. *Marron Letter*, Crim. Dkt. 100-1 at 3. A letter from Hunter's ex-wife described him as a man with the best interests of others at heart and the ability to be a leader with appropriate help and guidance. *Id.* at 5. A letter from his mother described his upbringing, educational and athletic

accomplishments, and his subsequent personality changes after his discharge from the military. *Id.* at 6. And, finally, a letter from his sister spoke of their childhood and Hunter's intelligence, work ethic, and family support. *Id.* at 7-8. Counsel also introduced Hunter's Certificate of Release or Discharge from Active Duty indicating his specialties, various awarded ribbons, his military education, and the fact that he was honorably discharged. Crim. Dkt.100-2 at 1.

Defense counsel also strenuously argued these mitigating factors both in his Sentencing Memorandum and his argument at the sentencing hearing. *Sent. Mem.*, Crim. Dkt. 100; *Sent. Tr.* at 67-80, Crim. Dkt. 115. He stressed the involuntariness of Hunter's mental illnesses and lack of appropriate treatment as factors underlying his offense and the sentencing enhancements. He stressed all of Hunter's positive traits through childhood and his time in the Marine Corps. He researched programs provided by the Bureau of Prisons and found one tailored to prisoners with mental health issues similar to those experienced by Hunter. He strongly urged the Court to recommend placement in the BOP STAGES program (Steps Toward Awareness, Growth, and Emotional Strength) that seemed to be particularly promising for Hunter.

The Court considered and discussed this mitigating evidence at the sentencing hearing. *Sent. Tr.* at 81-84. It also noted that Hunter's refusal to participate in treatment led to his being a danger to society. On balance, the Court

imposed a sentence considerably less than the 300 months advocated by the Government. Hunter has not suggested what other mitigating evidence could have been submitted at sentencing.

### (2)   Obstruction of Justice

After the initial disclosure of the Presentence Report was filed, the Government objected to the lack of an obstruction of justice enhancement pursuant to USSG § 3C1.1. The final PSR contained the enhancement based on two instances – an outburst in the courtroom during a recess in the trial stating he would "snap [a witness's] neck" the next time he saw him and for leaving a threatening voice mail with the presentence investigator. Counsel argued strenuously against the enhancement at the sentencing hearing and cross-examined the Government's witness. *Sent. Tr.*, Crim. Dkt. 115 at 9-12; 21-28. Counsel's argument focused on his position that Hunter did not "willfully" obstruct justice. The Court noted that it was a "close question" on whether the threatening outburst in court constituted obstruction of justice but concluded that the voicemail left with the presentence investigator "clearly" constituted obstruction in the context of sentencing. *Sent Tr.* at 34-36.

### (3)   Armed Career Criminal Designation

Counsel also objected to Hunter's designation as an armed career criminal in responding to that finding in the initial disclosure of the Presentence Report. He

contended that Hunter's conviction for California Assault with a Deadly Weapon, Cal. Penal Code § 245(a)(1) did not qualify as a "violent felony" under the Armed Career Criminal Act. Crim. Dkt. 90 at 5-6. In his subsequent Sentencing Memorandum, counsel noted that he had not withdrawn his objection to the designation. *Def.'s Sent. Mem.* at 2, n.1., Crim. Dkt. 100. He addressed the issue again at the sentencing hearing. *Sent. Tr.* at 33, Crim. Dkt. 15. The Court noted that there was some possibility that the Ninth Circuit would reverse *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009), which held that Cal. Penal Code § 245 constituted a crime of violence. However, it concluded that because it had not yet done so, the Court was bound by *Grajeda. Sent. Tr.* at 38, Crim. Dkt. 115. Therefore, even if counsel had failed to object to the armed career criminal designation or was deficient in his argument, the result would have been the same.

### E.    Violation of Right to Testify

Hunter claims among his various allegations of ineffective assistance of counsel in Ground Two "Right to testify on own behalf." This claim is totally unsupported by any facts. He does not state that he advised counsel that he wanted to testify and that counsel refused to put him on the stand. He does not state that counsel advised him not to testify. He does not claim that he was unaware of his right to testify. He does not state that had he testified the result of the trial would have been different.

"An accused's right to testify is a constitutional right of fundamental dimension . . . . Because the right is personal, it may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citations omitted). However, a defendant "is presumed to assent to his attorney's tactical decision not to have him testify . . . . [I]f the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging the lawyer." *Id*. Finally, a waiver of the right may inferred from a defendant's conduct and is presumed if the defendant does not testify or notify the court that he wants to do so. *Id*. As with other claims of ineffective assistance of counsel, the *Strickland* standard is applicable to claims that a defendant's attorney denied him his constitutional right to testify. *Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009) (citing *Medley v. Runnels*, 506 F.3d 857, 861 (9th Cir. 2007)). Furthermore, there is no prejudice if the defendant's testimony "would have been subjected to damning cross-examination on his prior convictions." *Id.*

Here, Hunter had a considerable history of criminal convictions with which his testimony would have been impeached had he testified. Also, as the Government noted in its Response, his trial counsel's successful suppression of Hunter's improperly-*Mirandized* confession to possessing the shotgun would have

been for naught. His confession was voluntarily and would thus had been admissible as impeachment evidence. *See United States v. Rosales-Aguilar*, 818 F.3d 965, 970 (9th Cir. 2016).

Hunter does not allege that counsel advised him against or prevented him from testifying at trial. However, even if they did, Hunter cannot show prejudice.

## CONCLUSION

An evidentiary hearing is only required if the issues raised in a § 2255 motion cannot be conclusively decided on the basis of the evidence in the record. Here, the Court need look no further than the record to decide Hunter's Motion. On the ineffective assistance of counsel claims he has not overcome *Strickland*'s strong presumption that counsel's performance fell "within the wide range of reasonable professional assistance" when considering counsel's "overall performance throughout the case." *Strickland*, 466 U.S. at 689; *Kimmelman*, 477 U.S. 382; 386.

Hunter had the benefit at trial of not one but two of the District of Idaho's most experienced defense attorneys. He also had the benefit of one of its most experienced appellate defense attorneys. That Hunter is not satisfied with his conviction and sentence does not render their performance deficient or *Rehaif* a means of obtaining relief.

## CERTIFICATE OF APPEALABILITY

The Court will deny a certificate of appealability. The standard to obtain review is lower than that required for a petitioner to succeed on the merits of his petition. *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000). To satisfy this lower standard when the court has denied a § 2255 motion, a petitioner must show reasonable minds could debate over the resolution of the issues or that questions raised in the petition deserve further review. *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

Having reviewed the record in this case, the Court finds that reasonable jurists would not find its determinations regarding Hunter's claims to be debatable or deserving of further review. Accordingly, the Court will not issue a certificate of appealability as to any issue raised in the § 2255 motion.

## ORDER

**IT IS HEREBY ORDERED that:**

1. Eric Courtney Hunter's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Crim. Dkt. 129 in Case No. 1:17-cr-00037-BLW and Civ. Dkt. 1 in Civ. Case No. 1:21-cv-00037-BLW) is **DISMISSED**.

2. Eric Courtney Hunter's Motion for Evidentiary Hearing (Civ. Dkt. 13 is **DENIED**. His Motion Requesting Status Conference

**MEMORANDUM DECISION AND ORDER - 26**

(Civ. Dkt. 15) and Motion to Compel (Civ. Dkt. 16) are

**MOOT**.

3.      No Certificate of Appealability shall issue. If Hunter wishes to

proceed to the United States Court of Appeals for the Ninth

Circuit, he must file a notice of appeal in this Court within

thirty days after entry of this Order, and he must seek a

Certificate of Appealability from the United States Court of

Appeals for the Ninth Circuit in accordance with Federal Rule

of Appellate Procedure 22(b)(2).

4.      If Hunter files a timely notice of appeal, and not until such

time, the Clerk of Court shall forward a copy of the notice of

appeal, together with this Order, to the Ninth Circuit Court of

Appeals.

DATED: March 29, 2023

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 28**